WARNER, J.
The insured dropped a hammer on his tile floor, causing it to chip. He filed a claim for the damage with his homeowner’s insurance company which denied coverage, because it claimed that the damage constituted “marring” which was excluded from coverage. After the homeowner filed suit, the trial court entered summary judgment, agreeing with the insurance company that the damage was not covered by the policy. We affirm, because marring is not covered under the policy, and the damage to the tile floor constitutes marring.
Benjamin and Beth Ergas were insured under a homeowner’s insurance policy with Universal. Mr. Ergas dropped a hammer on the tile floor in the home and chipped it. The chip was about the size of the hammer head, which appears from the pictures in the record to be the size of a quarter. The Ergases then filed a claim to recover for this damage under their homeowner’s policy. Universal denied the claim on grounds that the policy excluded coverage. Section I of the policy provides: ‘We insure against risk of direct loss to property ... We do not insure, however, for loss: ... 2. Caused by: ... (e) Any of the following: (1) Wear and tear, marring, deterioration....”
The Ergases filed suit against Universal. Universal moved for summary judgment on grounds that the policy excluded coverage for “marring,” and the damage to the tile constituted marring. Universal relied on the dictionary definition of the term “mar” to mean “detract from the perfection or wholeness of.” It argued that “marring” was not ambiguous because it could mean either a sudden act or one that took place over time. It interpreted the word to mean any damage at any time that made the property less than perfect.
The Ergases opposed the motion for summary judgment, arguing that the term “marring” was ambiguous because the policy did not define the term. As any ambiguity should be interpreted in their favor, *288 it should be given a construction that gave them the greatest amount of coverage. They also argued that, under the doctrine of ejusdem generis, the term should be read in context. As it was found in the policy between the terms “wear and tear” and “deterioration” it suggests that marring was intended to refer to damage which was caused over time. Since the damage from the dropped hammer was sudden, they argued it came within coverage. The trial court agreed with Universal and entered summary judgment in favor of Universal, finding no coverage. The Ergases now appeal.
Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. The standard of review is de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). The construction of an insurance policy is a question of law for the court and is subject to de novo review. Liebel v. Nationwide Ins. Co. of Fla., 22 So.3d 111, 114-15 (Fla. 4th DCA 2009).
The insurance policy in this case was an “all risk” policy. Relying on Phoenix Insurance Co. v. Branch, 234 So.2d 396 (Fla. 4th DCA 1970), our supreme court explained in Fayad v. Clarendon National Insurance Co., 899 So.2d 1082 (Fla.2005), that an all risk policy covered all fortuitous losses but it does not cover all conceivable losses. Id. at 1085-86.
The Clarendon court applied “well-established principles of insurance contract interpretation” to construe an exclusion to the all risk policy:
We begin with the guiding principle that insurance contracts are construed in accordance with “the plain language of the polic[y] as bargained for by the parties.” Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 33 (Fla.2000) (quoting Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla.1993)) (alteration in original). However, if the salient policy language is susceptible to two reasonable interpretations, one providing coverage and the other excluding coverage, the policy is considered ambiguous. See Anderson, 756 So.2d at 34; Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161, 165 (Fla.2003). Ambiguous coverage provisions are construed strictly against the insurer that drafted the policy and liberally in favor of the insured. See Anderson, 756 So.2d at 34; State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1076 (Fla.1998); Deni Assocs. of Florida, Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla.1998).
Id. at 1086. Nevertheless, “ ‘[ijnsurance contracts must be read in light of the skill and experience of ordinary people, and be given their everyday meaning as understood by the man on the street.’ ” Keen v. Fla. Sheriffs’ Self-Insurance Fund, 962 So.2d 1021, 1023 (Fla. 4th DCA 2007) (quoting Mason v. Fla. Sheriffs’ Self-Insurance Fund, 699 So.2d 268, 270 (Fla. 5th DCA 1997)).
The policy in question covers losses to the premises:
We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:
[[Image here]]
2. Caused by:
[[Image here]]
e. Any of the following:
(1) Wear and tear, marring, deterioration;
None of the terms in subsection e.(l) are defined.
*289 The definition of “mar,” the verb from which “marring” is taken, has multiple meanings. In its motion for summary judgment, appellee quoted two definitions: “the common, plain and ordinary meaning of the term ‘marring’ includes ‘to injure, spoil, damage, ruin, detract from’ (the Universal Dictionary of the English Language, 1939), or to ‘detract from the perfection or wholeness of (Miriam-Webster Online Dictionary, 2009)....”
Other definitions include: “1. To inflict damage, especially disfiguring damage, on; 2. To impair the soundness, perfection, or integrity of; spoil.” The American Heritage Dictionary of the English Language Online, (4th ed. 2000) (emphasis added). Appearing at www.thefree dictionary.com. Another definition is: “(tr): to cause harm to; spoil or impair; n. a disfiguring mark; blemish.” Collins English Dictionary — Complete and Unabridged Online; www.thefreedictionary. com. (emphasis added) Universal also quotes Black’s Law Dictionary (revised edition) for its definition of “mar”: “to make defective; to do serious injury to; to damage greatly; to impair, spoil, ruin; to do physical injury to, especially by cutting off or defacing a part; to mutilate; mangle, disfigure, deface.” (Emphasis added). Although it is of concern to us that the definitions cited by Universal include both doing great damage as well as the relatively minor blemishing of the appearance in this case, under either definition the damage to the floor would constitute marring.[1]
The Ergases offer no alternative definition of marring but suggest that the principle of ejusdem generis applies and that the word “marring” must be interpreted in context of the “wear and tear, marring, deterioration” exclusion, thus rendering the term ambiguous and susceptible to an interpretation which would not exclude from coverage this accidental damage. Because the other two terms suggest ordinary damage to property occurring gradually or over time, the terms do not cover damage or injury caused by an accidental risk, such as dropping a hammer on the tile floor, which was sudden.
In support of this gradual damage argument the Ergases rely on Ehsan v. Ericson Agency, Inc., 2003 WL 21716345 (Conn.Super. July 3, 2003). In that case, a tenant moved into the insured’s rental property and by the time he left, the home had been damaged by animals and their excrement as well as the floors and counters having been damaged. The insurance company denied coverage based in part upon its exclusion for “wear and tear, marring, or deterioration.” The trial court rejected this argument, finding that the damage was not in the nature of wear and tear, marring or deterioration. It relied on the general understanding of wear and tear as well as deterioration as being “the gradual deterioration resulting from use, lapse of time and to a certain extent to the operation of the elements, but do not cover destruction in whole or in part of a structure by a sudden catastrophe.” Id. at *15 *290 n. 18. As marring was included within these terms the court concluded that marring had to be understood within its context in the policy: “the term is meant to include that marring of appearance caused by wear and tear or deterioration resulting from the reasonable and normal use of an object over time.” Id. Nevertheless, the court also concluded that the extent of damage created by the tenant did not constitute marring even by a more general definition, because the damage exceeded mere wear and tear of the premises. We would disagree with the exact construction that the court placed on “marring” in Eh-san. If marring were so construed, there would be no difference between the three terms.
The principle of ejusdem generis literally means “of the same kind or class.” Black’s Law Dictionary 556 (8th ed. 2004) defines it as: “A canon of construction that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same type as those listed.” It refers to an item of the same type as those in the list.[2] As pointed out by Universal, there are no general terms or general words which require the application of the principle of ejusdem generis in the present contract. Rather, three specific causes are listed in the exclusion: wear and tear, marring, and deterioration. Each of these causes does not require interpretation by reference to the other. The principle of ejusdem generis does not apply.
As did the trial court, we conclude that the damage caused by the hammer dropping constituted marring and thus was excluded from policy coverage. We reject without further comment the other arguments for reversal made by appellant. We affirm the final summary judgment entered by the trial court.
CIKLIN, J„ and BLANC, PETER, Associate Judge, concur.

. While Universal maintains that marring means superficial damage to the appearance of the object, these definitions collectively form no bright line between superficial damage and more serious damage. The definitions of "mar” seem to include both concepts. These definitions of marring might thus cover almost all damage to property insured, whether slight or substantial. As this would cover most of what an insured would expect the policy to cover, a definition of "mar” which included serious injury would essentially gut coverage under the insurance policy. A term of an insurance policy should not be construed to reach an absurd result. See Gen. Star Indem. Co. v. W. Fla. Village Inn, Inc., 874 So.2d 26 (Fla. 2d DCA 2004). Nevertheless, in this case the Ergases have not argued that the definition is ambiguous because it is over-inclusive of damage.

. Black's Law Dictionary gives the following example of ejusdem generis: “[I]n the phrase horses, cattle, sheep, pigs, goats, or any other farm animal — despite its seeming breadth— would probably be held to include only four-legged, hoofed mammals typically found on farms, and thus would exclude chickens.”